**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 24-CR-342-SEH** |
| | ) | |
| **JESSE LANE MITCHELL** | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**

## I. INTRODUCTION

Defendant Jesse Lane Mitchell respectfully moves for a downward variance from the advisory Guideline range of 360 months to life and asks the Court to impose a sentence of 180 months (15 years) imprisonment followed by lifetime supervision.

Mr. Mitchell does not minimize his conduct or the harm he caused. He pled guilty to coercion and enticement of a minor, accepted responsibility, and agreed to register as a sex offender. The advisory range treats Mr. Mitchell as among the most culpable offenders without adequately accounting for the unusual relationship that precipitated the offense, his relative culpability within that relationship, or the characteristics that made him particularly susceptible to manipulation. The relationship dynamic between Jacklyn Roberts and Mr. Mitchell is discussed extensively in Mr. Mitchell's Sentencing Memorandum. That relationship illustrates the uniqueness of this case which was not contemplated by the guidelines, and it shows that Mr. Mitchell is less culpable than his co-defendant, Jacklyn Roberts.

Those circumstances do not excuse Mr. Mitchell's conduct or eliminate his agency. They do matter, however, to an individualized assessment of his culpability, his future risk, and the sentence necessary to protect the public. Mr. Mitchell has no criminal-history points, no prior conviction

for sexual misconduct, and no identified history of predatory behavior outside his relationship with Ms. Roberts. A sentence of 15 years—five years above the statutory minimum—followed by lifetime supervision would impose substantial punishment while ensuring lifelong treatment, monitoring, structure, and accountability.

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, protect the public, and provide Mr. Mitchell with appropriate treatment and correctional services. 18 U.S.C. § 3553. The particular facts of this case establish that 15 years imprisonment followed by lifetime supervision satisfies those purposes without imposing the excessive punishment represented by the advisory range.

## II. LEGAL STANDARD

The Federal Sentencing Guidelines (the "Guidelines") provide the starting point and initial benchmark for sentencing, but the Court must then determine the appropriate sentence after considering all applicable statutory factors. 18 U.S.C. § 3553(a)(1); *Kimbrough v. United* States, 552 U.S. 85, 108, 128 S. Ct. 558, (2007). Under 18 U.S.C. § 3553(a)'s "parsimony clause," a sentencing court must impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth in 18 U.S.C. § 3553(a)(2). *United States v. Samas,* 561 F.3d 108, 110 (2nd Cir. 2009). This requires the court to look at the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The court needs to "avoid unwarranted sentence disparities amongst defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). It is well established that the Federal Sentencing Guidelines are advisory. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738 (2005); *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007); *Kimbrough v. United States*, 552 U.S.

85, 128 S. Ct. 558 (2007). The Court must calculate the advisory Guidelines range, consider it, and then impose a sentence that satisfies the statutory sentencing purposes without being greater than necessary to comply with the purposes of sentencing. 18 U.S.C. § 3553; *Booker*, 543 U.S. at 225.

This Court has broad discretion to impose a sentence outside the guideline range based on an individualized assessment of those factors. *Gall v. United States,* 552 U.S. 38 (2007). A below Guideline sentence is not presumptively unreasonable, and the court is not required to provide "extraordinary" facts to justify a downward variance. *Id.*; *United States v. Smart*, 518 F.3d 800, 807 (10th Cir. 2008). Even a substantial variance is permissible when supported by specific facts, a holistic assessment of the statutory factors, and valid reasons for the sentence selected. *Id.*

**A. The Advisory Range Does Not Consider the Unusual Offense Dynamic or Accurately Measure Mr. Mitchell's Individual Culpability.**

The advisory range captures the aggravating features of the offense, but it does not consider the coercive third-party relationship dynamic between Jacklyn and Mr. Mitchell. The Guidelines account for M.V.'s age, Mr. Mitchell's access and influence, and repeated prohibited conduct.[1] Those considerations warrant a substantial sentence, but the resulting range of 360 months to life contains no corresponding adjustment for Mr. Mitchell's history and characteristics, nor the relationship dynamics of a mother that independently conceives of the abuse, encourages the abuse, and creates the opportunity to offend. The Court's variance authority permits it to address that mismatch.

Mr. Mitchell is less culpable than Jacklyn, and the Court should grant a downward variance to avoid any disparities amongst the co-defendants. 18 U.S.C.§ 3553; *United States v. Zapata,* 546

---

[1] PSR ⁋ 16-27.

F.3d 1179, 1194 (10th Cir. 2008)(stating that a sentencing court has discretion to consider sentence disparities amongst co-defendants). Mr. Mitchell's Sentencing Memorandum details how Jacklyn groomed her boyfriends to adopt an incestuous relationship towards her children.[2] The Sentencing Memorandum also describes the ongoing abuse and sexual fantasies with her children that predate her relationship with Mr. Mitchell.[3]

Jacklyn's duty as a mother and criminal behavior make her more culpable. As the mother of those children, Jacklyn had an elevated duty to ensure their safety. This is not a case where a mother failed to intervene in the abuse of her children or was willfully ignorant. Jacklyn conceived of the conduct, encouraged it, normalized it, and created opportunities for it to occur. She was predisposed and a repeat offender who had attempted to recruit a prior romantic partner into the same pattern of abuse. Based on Jacklyn's history of recruiting romantic partners to abuse her children, she would have found someone to engage in the conduct regardless of who it was. Mr. Mitchell did not bring this crime to life – Jacklyn did.

This Court sentenced Jacklyn Roberts to 210-months in custody for one count of Child Neglect in Indian Country.[4] Jacklyn requested a sentence of 28 months, while the government requested 40 years. Her sentence reflects the seriousness of her conduct and her role in the offense.

Sentencing Mr. Mitchell to a term substantially longer than Jacklyn's would not serve Congress' stated goal of a parsimonious outcome. If the sentence fails to account for the differences in relative culpability between Jacklyn and Mr. Mitchell, it will not serve the ends of

---

[2] Please refer to *Defendant's Sentencing Memorandum* for a detailed assessment of the history of abuse perpetrated by Jacklyn Roberts. ECF No. 108. Defense counsel provides a summary of those arguments herein instead of adopting repetitious arguments in an effort to avoid judicial inefficiency.

[3] *See id.*

[4] ECF No. 107.

justice. Mr. Mitchell bears full responsibility for his conduct, but his sentence should reflect that Jacklyn originated and cultivated the offense dynamic, provided access to MV and her other children, and used her influence over Mr. Mitchell to perpetuate the abuse. A 15 year sentence would impose severe punishment without treating him as more culpable than the person who drove the conduct. The Court should recognize that a defendant who acts at the initiation and persistent encouragement of the victim's parent occupies a materially different position from an independent predator who seeks out and grooms a child.

**B. This is Mr. Mitchell's First Prison Sentence, Which Carries Greater Significance and is a Basis for a Downward Variance.**

Courts have recognized that a first-time prison sentence carries more significance than a defendant's subsequent prison sentences, and a downward variance may be granted for first time incarceration sentences. *See U.S. v. Baker*, 445 F.3d 987 (7th Cir. 2006). In *Baker,* the defendant was convicted of distributing child pornography, and the court granted a downward variance from a guideline range of 108-135 months to 87 months. *Id.* at 988. The court found it significant that Mr. Baker had never been in prison before, and a prison sentence would mean more to him than a defendant who had previously been imprisoned. "Consideration of this factor is consistent with § 3553's directive that the sentence reflect the need for 'just punishment,' and 'adequate deterrence.'" (internal quotations omitted) *Id.* at 992.

This Court should consider that Mr. Mitchell has never served a prison sentence and grant a downward variance. He has never been in any significant trouble before.[5] This sentence will be significant for him regardless of how much time he is sentenced to because the minimum time will be ten years. Mr. Mitchell is in his 30's, and even the minimum sentence will disrupt opportunities

---

[5] PSR ⁋ 29-34.

for a stable life. A person's 30's is usually the time frame that people select a long-term career path, they become established in a job, and they find stable housing. Mr. Mitchell will not have that opportunity because he will serve a prison sentence during the period that most people find stability in their lives.

The time he has been in jail awaiting sentencing has made an impression on him, and the time he is incarcerated will cause a severe disruption in his life. The Court should consider the significance of this sentence for a person that has never had more than a single traffic citation and grant a downward variance.

**C. Mr. Mitchell's Zero-Point Criminal History Weighs Against Treating Him as a Lifelong or Serial Predator.**

Mr. Mitchell does not qualify for a zero-point offender reduction because of the nature of this crime, but that does not prevent the Court from considering his zero criminal points for a downward variance. Mr. Mitchell's actual history does not reveal a progression of predatory conduct. He has no criminal-history points, no prior felony conviction, and no prior conviction for sexual misconduct.[6] His only adult conviction is a traffic offense that receives no criminal-history points.[7] The PSR lists juvenile matters, but those were dismissed, and the 2024 state case arose from the conduct underlying this federal prosecution which was also dismissed.[8] His background and characteristics indicate that he is unlikely to reoffend.

The Sentencing Commission has specifically recognized that zero-point offenders are a meaningfully distinct population.[9] Studies have shown that zero-point offenders are less likely to

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Recidivism and the "First Offender,"* United States Sentencing Commission, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf.

reoffend than those with criminal history points. In 2021, the Federal Sentencing Commission published a report (the "Report") analyzing recidivism rates of inmates released in 2010.[10] The report found that "offenders with zero criminal history points had the lowest rearrest rates."[11] Even within Criminal History Category I, there is a vast difference between a zero-point and a one-point offender, as there is a sharp increase in recidivism with one-point offenders as opposed to zero-point offenders.[12]

Mr. Mitchell's zero-point offender status should be recognized, as he falls within the group of defendants that is less likely to reoffend. It is also meaningful that Mr. Mitchell is in his 30's and has never been in any serious trouble. This puts him in a different position than a zero-point offender who is 19 or 20 because it shows that Mr. Mitchell had a disposition to be a law-abiding citizen. It was only under Jacklyn's influence that he deviated. Mr. Mitchell's history does not identify other victims, independent grooming behavior, or sexual misconduct outside his relationship with Jacklyn. His criminal record therefore does not support treating him as a career offender or as someone whose life reflected an escalating pattern of predation.

The Chapter Four enhancement labels Mr. Mitchell a repeat and dangerous sex offender based on multiple acts within this offense.[13] That calculation is part of the advisory range, but it should not displace the Court's individualized assessment of what his actual history shows. A label generated by conduct within a single, highly unusual relationship does not answer the separate question of the sentence necessary to protect the public from future crimes.

---

[10] *Recidivism of Federal Offenders Released in 2010*, United States Sentencing Commission, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf.
[11] *Id.* at 26.
[12] *Id.* at 27.
[13] PSR ⁋ 16-24.

The circumstances that produced this offense were specific and unlikely to recur. The relationship has ended, and substantial incarceration will create additional separation. The risk assessment should be based on his actual history and the context of the offense, not solely on the range generated by stacked enhancements.

**D. Enhancement stacking produces a range that measures the offense's aggravating features but not the whole person before the Court.**

The advisory range results from multiple cumulative increases. Mr. Mitchell's base offense level of 28 rises to 40 through enhancements based on supervisory control, undue influence, and M.V.'s age.[14] The repeat-and-dangerous-sex-offender provision then adds five more levels before acceptance of responsibility, producing a total offense level of 42 and a range of 360 months to life.[15]

The cumulative effect of these enhancements place Mr. Mitchell at or beyond the top of the sentencing table without accounting for the relationship that precipitated the offense – Jacklyn's initiating and facilitating role, Mr. Mitchell's individual vulnerabilities, or his otherwise negligible criminal history. The calculation therefore provides a starting point, not a complete answer. The sentencing inquiry permits consideration of the widest possible breadth of information about a defendant so the Court has the fullest information about his life and characteristics. Here, that broader information shows that the advisory range overstates the punishment necessary for this defendant, even while accurately identifying the seriousness of his conduct.

The requested variance does not disregard the Guidelines. A 15-year sentence remains five years above the statutory minimum and reflects the aggravating circumstances incorporated into the calculation. It simply recognizes that a range beginning at thirty years does not adequately

---

[14] PSR ⁋ 19, 24.
[15] *Id.* at 24-27.

distinguish Mr. Mitchell from a serial or independent predator whose history, motivation, and conduct demonstrate materially greater individual culpability.

**E. Fifteen years of imprisonment followed by lifetime supervision will provide severe punishment and enduring protection of the public.**

A 15-year sentence followed by lifetime supervision is not lenient. It is five years above the statutory minimum and will require Mr. Mitchell to spend much of his adult life in federal custody. It recognizes the seriousness of the offense, imposes just punishment, and communicates consequences that are sufficient to promote respect for the law and deter criminal conduct.

The requested sentence will not mark the end of Mr. Mitchell's accountability. The Court may impose lifetime supervised release, and Mr. Mitchell asks the Court to do so. The PSR identifies special sex-offender conditions, search conditions, substance-abuse treatment, and testing means of protecting the public during supervision.[16] Mr. Mitchell must also register as a sex offender. Upon release, he would therefore remain subject to lifelong monitoring, treatment, restrictions, and external oversight. Those obligations provide continuing protection without imposing a sentence that is unreasonably high.

Lifetime supervision is especially appropriate given Mr. Mitchell's history. His educational records show that his performance improved significantly when consistent support and resources were available and deteriorated when that structure was disrupted. Supervision can provide the accountability, treatment, and structure necessary to address his mental-health conditions, substance use, developmental limitations, and vulnerability to coercive relationships.

The Court need not rely on imprisonment alone to protect the public. Fifteen years of incarceration, followed by lifetime supervision and registration, constitutes a comprehensive

---

[16] PSR ¶ 53-55.

sentence. It incapacitates Mr. Mitchell for a substantial period and then subjects him to enduring controls designed to reduce risk, promote treatment, and detect noncompliance.

## III. CONCLUSION.

Mr. Mitchell respectfully asks the Court to grant his Motion for Downward Variance and impose a sentence of 180 months imprisonment followed by lifetime supervised release. That sentence accounts for the seriousness of the offense and the harm Mr. Mitchell caused while recognizing his relative culpability, zero-point criminal history, acceptance of responsibility, mental health and developmental vulnerabilities, and the highly specific relationship that precipitated the conduct. With lifetime supervision, registration, treatment, and monitoring, a substantial punishment will be imposed. Such a sentence will protect the public, promote rehabilitation, and ensure continued lifelong accountability.

Respectfully submitted,

**OFFICE OF THE FEDERAL PUBLIC DEFENDER**

Julia L. O'Connell, Federal Defender

By: *<u>/s/ Jacquelyn N. Witt</u>*
Jacquelyn N. Witt
Assistant Federal Defender
One West Third Street,
Ste. 1225
Tulsa, OK 74103
Jackie_Witt@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of September 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Stephanie Noel Ihler
Reagan V. Reininger

*Assistant United States Attorneys*
Counsel for the Government

*/s/ Jacquelyn N. Witt*
Jacquelyn N. Witt
*Assistant Federal Public Defender*